UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Gerald M. Tyler, | Civil No. 06-2392 (PAM/RLE) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| Craig C. Danielson, Erwin Danielson, and RiverBank, | |
| Defendants. | |

This matter is before the Court on Defendants' Motion to Dismiss. For the reasons that follow, the Court grants the Motion.

**BACKGROUND**

Defendant RiverBank is a Wisconsin corporation that provides banking services. Defendants Craig and Erwin Danielson operate RiverBank as president, chief executive officer, and chairman of its board of directors. Plaintiff Gerald Tyler contends that Defendants allowed his ex-wife, Bianca Tyler, to abscond funds from various accounts that he held in RiverBank.[1]

On March 4, 2002, Plaintiff commenced an action against RiverBank and ABC Insurance Company in Wisconsin state court. In that action, Plaintiff alleged that RiverBank mishandled his individual retirement and certificate of deposit accounts by allowing Bianca Tyler to make unauthorized withdrawals of money from the accounts. The complaint

---

[1] Bianca Tyler was his wife at the time of the withdrawals.

asserted claims for breach of contract, breach of fiduciary duty, negligence, and punitive damages. Prior to trial, the court granted partial summary judgment to RiverBank. The remainder of the case proceeded, and a jury found in favor of RiverBank on all counts. Thereafter, the court denied Plaintiff's post-trial motions and entered judgment dismissing Plaintiff's claims with prejudice. Plaintiff appealed to the Wisconsin Court of Appeals, but the appeal was dismissed. Plaintiff then petitioned to have his case heard by the Wisconsin Supreme Court. That appeal is now pending.

Plaintiff filed the instant action in June 2006. The Complaint does not identify any specific causes of action. However, the Complaint states:

> Plaintiff's claims are based upon matters arising from the theft by fraud of money from plaintiff's Riverbank accounts including an Individual Retirement Account (IRA), a Certificate of Deposit (CD) account and the fraudulent use of plaintiff's VISA credit card at defendant Riverbank by plaintiff's then spouse Bianca S. Tyler and the frauds perpetrated by defendants before, during and following the trial on March 29, 2005 in Polk County (Wisconsin) Circuit Court, Case No. 02-CV-98, resulting from the legal proceedings captioned Gerald Tyler v. Riverbank and ABC Insurance Company.

(Compl. ¶ 8.)

Most of the factual allegations regurgitate how RiverBank wrongfully provided Bianca Tyler access to Plaintiff's accounts. In addition, the Complaint identifies two incidents of alleged mismanagement that were not raised in the state court proceeding. First, it alleges that, despite Plaintiff's direction to invest $90,000 into a RiverBank money market account, RiverBank invested the funds in a RiverBank certificate of deposit and did not disclose this until February 2002. (Id. ¶ 9(2).) Second, it alleges that RiverBank allowed

Bianca Tyler to process a fraudulent cash-advance transaction in the amount of $700 in March 2000. (Id. ¶ 9(7).)

The Complaint also alleges that RiverBank used deceptive tactics in the state court action. In particular, the Complaint asserts that RiverBank schemed to conceal the unauthorized withdrawals "by stonewalling requests by plaintiff and his attorney to cooperate and provide documents enabling plaintiff to learn how his accounts had been pillaged and in what amount." (Id. ¶ 9(9); see also id. ¶ 9(22).) In addition, the Complaint claims that RiverBank and Craig Danielson "issued false and misleading statements . . . that the RiverBank had cooperated fully in retrieving records needed by plaintiff to determine his financial losses." (Id. ¶ 9(11).) The Complaint further alleges that RiverBank produced a fraudulent document in response to his discovery requests, and used the fraudulent document in support of its summary judgment motion in the state court action. (Id. ¶ 9(18).) Finally, Plaintiff claims that Craig Danielson failed to provide important testimony about forged withdrawal and cash-advance forms when Danielson testified at Plaintiff's divorce proceeding. (Id. ¶ 9(13).)

In this action, Plaintiff seeks $103,757.58 for the unauthorized withdrawals from his individual retirement account; $75,000 for the alleged concealment of the fraudulent transfer of funds from his certificate of deposit account; and $1,000,000 in punitive damages. Plaintiff sought similar relief in the state court action. (Id. ¶ 9(15).) Defendants argue that the claims Plaintiff now brings are procedurally barred.

**DISCUSSION**

**A.     Standard of Review**

Defendants rely on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to argue that dismissal of the Complaint is appropriate. A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may challenge the complaint either on its face or on the factual truthfulness of its averments. Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993). When a defendant challenges the complaint on its face, the Court takes the factual allegations as true and will only dismiss the complaint if the plaintiff fails to allege an essential element for subject matter jurisdiction. Id.

For the purposes of a motion to dismiss under Rule 12(b)(6), the Court takes all facts alleged in the complaint as true. See Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court must construe the allegations in the complaint and reasonable inferences arising from the complaint favorably to the plaintiff. See Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). A motion to dismiss will be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Id.; see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**B.     The Rooker-Feldman Doctrine**

Defendants argue that most of Plaintiff's claims are barred by the Rooker-Feldman doctrine. The Rooker-Feldman doctrine states that lower federal courts lack subject matter jurisdiction to review state court judicial determinations. D.C. Ct. of App. v. Feldman, 460 U.S. 462, 476 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); Prince v. Ark. Bd. of Exam'rs in Psychology, 380 F.3d 337, 340 (8th Cir. 2004). Instead, federal review of a

state court decision is vested exclusively in the United States Supreme Court. Feldman, 460 U.S. at 486. The doctrine bars not only straightforward review of state court judgments, but also "indirect attempts by federal plaintiffs to undermine state court decisions." Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000). In determining whether Rooker-Feldman applies, a federal court must determine whether the claim is "inextricably intertwined" with the claim already decided in the state court. Id. at 492-93. A claim brought in federal court is inextricably intertwined if the federal district court must nullify the state court decision to find in favor of the federal plaintiff. Id. at 493. Thus, "Rooker-Feldman precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its holding." Snider v. City of Excelsior Springs, 154 F.3d 809, 811 (8th Cir. 1998); see also Johnson v. City of Shorewood, 360 F.3d 810, 819 (8th Cir. 2004) (Rooker-Feldman bars federal review if requested relief would effectively reverse the state court decision or void its ruling).[2]

Because Rooker-Feldman bars any claim that seeks to challenge the state court judgment, any claims based on alleged mismanagement of Plaintiff's individual retirement

---

[2] However, the Rooker-Feldman doctrine has its limits. For example, Rooker-Feldman does not bar a federal claim when the state court is faced with federal and state claims, but declines to address the merits of the federal claims and rules only on the state issues. Simes v. Huckabee, 354 F.3d 823, 828-30 (8th Cir. 2004). Likewise, Rooker-Feldman does not apply to claims where Congress has specifically granted jurisdiction to the federal courts. Silverman v. Silverman, 338 F.3d 886, 894-95 (8th Cir. 2003). Finally, when "there is parallel state and federal litigation, Rooker-Feldman is not triggered simply by the entry of judgment in state court." Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 292 (2005).

and certificate of deposit accounts fail.  Moreover, Rooker-Feldman bars Plaintiff's claims based on pre-trial discovery tactics, fabricated evidence, and abusive arguments made in the state court action.  It is within the exclusive province of the state court to address these issues, which occurred during the state court action.  Plaintiff may seek relief from the state court judgment under Wisconsin Statute § 806.07(c),[3] but cannot now use the federal courts to challenge the adverse verdict based on the alleged misconduct.

**C.    Claim Preclusion**

Two factual allegations remain: the wrongful deposit of funds into a certificate of deposit account and the processing of a fraudulent cash-advance transaction.  Defendant argues that claim preclusion bars these claims.

The Court must "give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."  Hicks v. O'Meara, 31 F.3d 744, 746 (8th Cir. 1994) (citations omitted).  Therefore, the question is whether the Wisconsin courts would find that the doctrine of claim preclusion bars these claims.

Under Wisconsin law, claim preclusion provides that "a final judgment on the merits in one action bars parties from relitigating any claim that arises out of the same relevant facts, transactions, or occurrences."  Kruckenberg v. Harvey, 694 N.W.2d 879, 884 (Wis. 2005). The doctrine bars claims that were litigated or that might have been litigated in the former proceeding.  Id. A court must determine "whether matters undecided in a prior lawsuit fall

---

[3] Wisconsin Statute § 806.07(c) allows a party to seek relief from a judgment, order, or stipulation based on fraud, misrepresentation, or other misconduct of an adverse party.

within the bounds of that prior judgment." Id. at 885.  As the Kruckenberg court explained:

> Claim preclusion . . . provides an effective and useful means to establish and fix the rights of individuals, to relieve parties of the cost and vexation of multiple lawsuits, to conserve judicial resources, to prevent inconsistent decisions, and to encourage reliance on adjudication.  The doctrine of claim preclusion recognizes that "endless litigation leads to chaos; that certainty in legal relations must be maintained; that after a party has had his day in court, justice, expediency, and the preservation of the public tranquility requires that the matter be at an end."

Id. at 884-85 (citation omitted).

To apply claim preclusion, Wisconsin courts require three elements: "(1) identity between the parties or their privies in the prior and present suits; (2) prior litigation that resulted in a final judgment on the merits by a court with jurisdiction; and (3) identity of the causes of action in the two suits." Id. at 885.  Plaintiff contests the first and third elements.

Relating to the first element, the parties disagree on whether Craig and Erwin Danielson are privies to RiverBank.  Specifically, Plaintiff denies that he is suing them as employees of the bank.  The Complaint belies his contention, as it alleges that Craig and Erwin Danielson injured him through their actions as bank officials. "A prior judgment against an employer bars a subsequent suit against its employees." Lindas v. Cady, 499 N.W.2d 692, 698 (Wis. Ct. App. 1993) (citation omitted); see also Restatement (Second) of Judgments § 51 (1982) ("If two persons have a relationship such that one of them is vicariously responsible for the conduct of the other, and an action brought by the injured person against one of them, the judgment in the action [generally] has . . . preclusive effects against the injured person in a subsequent action against the other.").  Because Plaintiff is

suing Craig and Erwin Danielson for actions they took as agents of RiverBank, the first element is satisfied.

To analyze the third element, Wisconsin courts use a transactional approach:

> Under the doctrine of claim preclusion, a valid and final judgment in an action extinguishes all rights to remedies against a defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. The transactional approach is not capable of a "mathematically precise definition," and determining what factual grouping constitutes a "transaction". . . [requires] considering such factors as whether the facts are related in time, space, origin, or motivation.

Kruckenberg, 694 N.W.2d at 886. Thus, this "pragmatic approach . . . looks to see if the claim asserted in the second action should have been presented for decision in the earlier action, taking into account practical considerations relating mainly to trial convenience and fairness." Id.

Plaintiff should have presented the wrongful deposit and processing claims in the state court action. These acts of alleged mismanagement are part of a series of connected transactions out of which Plaintiff's breach of contract, breach of fiduciary duty, and negligence claims arose. Thus, the third element is satisfied and claim preclusion bars any action based on these allegations of mismanagement.

**CONCLUSION**

Rooker-Feldman bars Plaintiff from re-litigating the claims inextricably intertwined with the claims already decided by the Wisconsin state court. Claim preclusion bars the remaining claims. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss (Docket No. 4) is **GRANTED**; and

2. The Complaint is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 16, 2006

s/ Paul Magnuson
Paul A. Magnuson
United States District Court Judge